You must have been an English major in undergrad. 52 pages of briefing for one issue. That is a record in my six years. Maybe the other judges have more, but that's a lot of pages for one issue. In my defense, and I certainly understand and attempt to err on the side of cutting where I can cut. You mean this was the cut version? I don't charge you for time here. This was the cut version. I mean, this was 52 pages. We do take notice. I appreciate your time and consideration of this case. I did read over 10,000 pages of record for it as well. So I did try to get in the key facts and issues here. Oh, you did that well. Many facts. I sincerely apologize. You don't have to apologize. I just want you to know that I noticed that you wrote 52 pages. I appreciate that. And I read them all. Well, thank you very much. That's why we enlarged the scope of our rule to allow 52 pages. You took all of them, which you're entitled to do. I'm not criticizing you. I just figured you were an English major. If I don't, I've got to go back to Mr. Perkins and tell him why I didn't use my pages. Well, you can go on in effect of existence of counsel, can't you? Certainly not. Let's begin. May it please the court, counsel. Again, for the record, my name is Elizabeth Pratt, and I represent Lloyd Perkins in this matter. This is the second of two distinct but related cases before this court today on appeal. This case presents a single issue, and that is whether this court should reverse and remand Mr. Perkins' case because the trial court abused its discretion in denying counsel's well-founded motion to withdraw where counsel set forth good cause and substitution of counsel would have not have caused unreasonable delays or prejudice to the state's ability to prosecute Mr. Perkins in this case. First, there was good cause for counsel's withdrawal. While not cited by counsel himself, as this court will be extremely familiar with from the previous argument, there were lingering issues of post-trial claims of ineffective assistance and neglect of the cases that were made by Mr. Perkins and not addressed by the court at any time. That is certainly a relevant consideration in addressing counsel's motion to withdraw and the trial court's handling of that issue. Again, this was also a very complex case, and counsel claimed that he was overwhelmed by his own private practice, which was mostly civil cases with some criminal practice. Based on that, remarks seem to not be a standard case for this attorney. He also cited two difficulties in handling the estate for his deceased mother and other personal matters, which were not fully detailed for the court. These all provided a solid basis for withdrawal under the rule and should be considered in good cause for withdrawing. This was also not a last-minute request. This was not on the eve of trial. This was not after substantial motions had been filed in that case, and delays were inevitable based on the factual situation in this case. The period that counsel had been assigned to this case was about 8.5 months. However, most of that period was addressing the matters in the obstruction case, which represented just a small portion of the evidence, witnesses, and necessary legal research to properly handle this complex case. There were also delays that were not attributable to counsel's representation. There were also delays that were not attributable to counsel's representation. At one point during that period, the state mentioned that there was a lot of forensic evidence, although they did not provide detail on what they were referencing. And also, counsel had undergone surgery. It appears something to do with a hand or thumb because he was in a splint and asserted he would be able to handle this much larger, more serious, and more complex case. But you just kind of hit the nail on the head, I think. This was a really complex case. And like you said, you read 10,000 pages. But this lawyer had been involved with both the obstruction case and now this case. He knew the facts. And so it kind of put the trial judge in a tough spot, right? Because you've got to hire a lawyer to start all over again? Certainly. And I think there are a couple of things that I'd like the Court to note in considering that. First, this is an attorney who off the bat said, I don't want to take – I'm trying to refuse all appointments. It at least appears he tried to do his due diligence and represent Mr. Americans during the obstruction case and then became aware as he led into the robbery case, this is really too much for me. Another important factor that the Court should be aware of is that discovery wasn't complete. The State had not yet filed even its initial formal response to discovery. And although there were – So what you're saying is there was plenty of time to get somebody else? Absolutely. So although certainly appointed counsel had some familiarity with the facts and the issues, the facts and issues in the robbery case were – as I said, the record in this case – and I, of course, don't have all the discovery. I just have what was submitted in the record, well over 9,000 pages. And that includes technical information on cell phones, on data extractions, forensic reports. Just for a note, in the State's discovery responses, the obstruction case, they cited six witnesses. In the robbery case, they cited 24, which included, I believe, four experts. We've got four different police agencies that we're working on in this case. We have a number of – again, in the initial response, there were 10 audio-video interviews of co-defendants. And then to complicate matters, after the obstruction case, Mr. Perkins is now in IDOC. So he can't just go visit him at the jail to get information. He can't go show him items that they need to talk about at the jail. He has to arrange a visit with IDOC and travel. And at one point, he noted Mr. Perkins was down in Vianna, and this case is up in Montgomery County. So that certainly is – Didn't he file a motion to bring him back? I believe the motion was related to having him there during the trial. And that was rejected, actually, because of the number of co-defendants and other issues related to the case. But the essence of the robbery was very involved with the obstruction. I mean, you've got the people who are involved with the case, and they said there were some admissions made to him. We have essentially two lay witnesses that were in common between the two, Mr. Pollard and Megan Finley, who was in the obstruction case a very uncooperative witness. After time passes, she was a much more cooperative witness in the robbery case. Well, she was put in jail. She was actually in custody during the obstruction case as well, I believe. And perhaps it already served her sense. At any rate, so we have those two witnesses, but we have a case where even if counsel had done the work, he's saying, I'm realizing how complex this case is. I'm too overwhelmed by my other obligations. I can't do it. And the court says not, you know, well, let me figure out what it is that's on your plate or how we can manage this. The court just treats it as a timing issue. And yet at future hearings, when counsel continues to complain, say, you know, I need more time with the investigator. I need more time with this. I'm doing the best I can with my caseload. There's pushback from both the state and the court, even though that was their solution. But again, these, there was certainly going to be delays no matter who represented Mr. Perkins at the robbery trial. But the important part is that this be a fair proceeding where he has access to counsel who's able to give it its due diligence. Now, the supposed prejudice to the state also isn't supported by the record. Virtually all of the witnesses were law enforcement or testifying as co-defendants who had a deal to do so. Again, the exceptions would have been Jeff Shade, although I believe the record supports an inference that he also had some sort of negotiation with the state that he would not be charged if he testified. The other is George Pollard, who could have been charged in the obstruction case and also had another pending matter. Now, this is the witness that the state alludes to, we believe, in reference to the health or age issues. But Mr. Pollard had already testified and been cross-examined by counsel at trial. There were other ways to get around that, and his testimony was largely cumulative. We had, again, a huge number of witnesses who were co-defendants, alleged victims, et cetera, who the state had available and could have called to testify. Now, this is not an ineffective assistance of counsel, and I'd like to make that clear based on the state's briefing. However, there are errors that are attributable to, or certainly call into question, counsel's ability to diligently handle this case, considering his other obligations. In the obstruction case itself, his motion that had the most citations to authority was a motion to dismiss the obstruction case, which counsel proceeded on, despite the state having dismissed that indictment two months earlier. Counsel also failed to file a closed trial motion. He did not subpoena video from the gas station or the J.C. Penney's in a timely manner. He decided to do so a year and a half after the incident. So, you know, now you've confused me. Are you claiming that there was ineffective assistance of counsel? No. The issue is whether counsel, whether the court erred in refusing to appoint new counsel and allow this counsel to withdraw. Well, but one of the, one of the issues must be, what if, what if there was effective assistance of counsel, but not effective counsel, despite the court's ruling? Then what do we do? Go ahead, Nancy, if you can answer. Sure. Sure. There are not, this is not a common situation. There are not a great number of cases that delineate the boundaries between these different issues. That being said, the standard for whether or not an attorney should be allowed to withdraw from a case is an abusive discretion standard, and that did result in problems which should undermine confidence in the result of the representation and trial. But why should it undermine confidence if there was effective assistance? I mean, I underlined that on page 47 of your brief, where you said, Mr. Perkins does not assert that this record substantiates a claim of ineffective assistance of counsel under the Strickland standard. He similarly does not deny that counsel did work on his behalf. And then you go on and talk about the motions like you were just doing. So I don't understand. If, if the lawyer did a good job, okay, what, what's no harm, no foul? I would say a lack of proven prejudice is very different from sufficient counsel. And I think the analogies we make to conflicted counsel or other sorts of issues really underlie that point. And if you have an actual conflict of interest, you don't have to prove prejudice. What you have to prove is that there's some error that's tied to that issue. And this is a similar case where we have counsel did work. But there's some error. What's the error here? Sure. The error is that counsel, even in the things that he did, there are notable problems. There were very serious problems with the counsel. There were problems with discovery. So maybe that is ineffective assistance. Maybe it falls below the reasonable standard of what we would expect, which is the Strickland standard. Sure. I very well think that there, there was ineffective assistance in the sense that counsel's representation was unreasonable. Filing a motion to, filing a motion regarding line-up procedures without obtaining the photos or the addressing the discovery issues by the state of police, without trying to get the videos of those locations, without doing the due diligence, without being familiar with the Supreme Court case law regarding what factors to consider, that's certainly unreasonable in my view and attributable to counsel. But that would, that would be unreasonable representation. Sure. But as this Court knows, the standard for ineffective assistance of counsel is extremely high. You have to prove prejudice and you have to prove that it would have in some way, in some way changed the outcome of this case. Now, certainly it may have, but on this record, considering the things counsel did or did not do, and considering the numerous witnesses presented by the state, I'm left without the ability to argue that we would have had a reasonable probability of a different outcome at the jury trial. So it's not that counsel's representation was effective. I don't think it was. I think the record supports that there were very serious problems at, at multiple points throughout the process. But the issue is that counsel asserted his inability to, to do so and then in some ways proved his inability to do so. But we can only make a strickling argument if there is enough proof in the record that this was, this was a reasonable probability of a different outcome. And because of the evidence in this case, I, I can't in good faith make that argument. But that is not the standard required for this issue. Thank you very much. Thank you for the extra time. Appreciate it. No, I, I, page 47 calls that. May it please the court, counsel, Chelsea Casten on behalf of the state. Your honors, in this particular case, a time delay was inevitable. What comes down is the trial court had to question how much of a delay was going to result from the two options that he had, which were denying a motion to withdraw or appointing a counsel. This has to be looked at from the time when the court made its decision because we get the benefit of hindsight and he was able to make the decision. He was in murky waters of pretrial. He didn't have a looking glass to know exactly how much time it was going to take if he allowed counsel to continue versus if he did assign new counsel. It's completely logical looking at the issue from the trial court standpoint to grant trial counsel time where time was inevitable to be delayed in this case. The question was just how much. So as your honor noted, this wasn't a next case. They had already finished one case that was intertwined with this one had already gone on for eight months and two weeks. I think was the exact breakdown and it was going to take longer. So new counsel was going to have to come in on a case where he was going to have to also learn about another case because it was intertwined. Or he was going to deny the motion to withdraw and grant counsel additional time. When he comes to the court, he tells them exactly what was going on in his life and he says, this isn't an issue where we're having a breakdown of communication. Defendant and I are communicating. I just have a lot going on. The scheduled trial date at that point, I believe, was one month out from the date of this motion, maybe a little bit longer. So it's completely natural that the trial court would hear his argument and say, okay, well, this is an easy solution instead of bringing in someone completely new who isn't familiar with these facts and the evidence. I'll just give you more time. It was a very reasonable decision made by the trial court, particularly where the state did object to the motion to withdraw. They said it was pending, it had been a long time period, and that there were some witnesses who were elderly and had health issues. That was plural. I don't know if there were multiple witnesses who were older and had health issues. Obviously, the witness from the obstruction of justice case was an older man who was having health issues and had a heart attack in jail. So that was a concern for the state if they were planning on him testifying. The state holds that the defendant isn't raising ineffective assistance of counsel, but ineffective assistance of counsel would demonstrate error by the trial court denying the motion. It's just not present here, Your Honors. The court was faced with a very difficult decision, and he weighed the options and tried to go with the lesser evil. Either way, there was going to be a delay. It was just trying to minimize the amount of time it was going to take to get to the next trial. I understand this was a small county. It's probably difficult to find a lawyer who's going to be able to handle a case like this. But if a lawyer comes in and says, I can't do it, then should a trial judge let him out? I mean, if he just comes in and says, look, my health is bad, I have a private practice, I just can't do it, judge. I did this one, but I just can't do it. Do we have an obligation to let him out? I think it's a weighing of all factors, Your Honor. Certainly he has to consider it. But no, he doesn't have to grant it when you have so many other factors like timing, fairness to the state, what's going to happen if you have to bring in new counsel. He didn't even say, like, I can't do it. He just said, I have too much on my plate right now. I don't have enough time. Well, we know that he at least, after this, we know that he at least tried because he asked for more money for an investigator and he was at least making an effort at it. Yes, Your Honor. But I don't know. It just seems like if someone comes in and says, I can't do it. Your Honor, on a personal level, I felt for the attorney because I'm like, oh, if I go and ask a court to withdraw because I don't have time, I hope it's granted. At the same time, I understand the standpoint of the court, which is we're almost nine months into this case and I can't just easily cover you as counsel for this defendant. It's in depth. It's a difficult position for the trial court to be on. And they did try to accommodate him. There's instances when the court won't grant a motion to withdraw where counsel has claimed that there's been a breakdown in communication between counsel and his defendant and those aren't granted. That wasn't even the case here. It was, I just have a lot going on, so I feel like I need to withdraw. Both trial counsel and the court in this case were doing their ethical duties in the process, and the result is what the result was. But the state does not feel that the court erred in not granting the motion to withdraw, and counsel still gave effective assistance to his client. He gave an admirable, very thorough representation to his client. I don't know that if they win the argument in the last appeal on the crankle. That will make things interesting, Your Honor, yes. It will make things interesting. Unless the court has any further questions, we would ask you to affirm the ruling of the lower court. Thank you very much. Ms. Brown, anything else? First, I'd like to address some of the actual comments that the attorney made to the court. He indicated he, after trying the obstruction of justice case, it became apparent to him that he would not have sufficient time to devote to it. But it was not merely time at the current point in time. There was no indication that some extensions would solve the problem. He said, I'm a solo general practitioner with no associates. I have a great deal of work on my plate. He mostly did civil work, so this isn't something where he just tried a very similar complex criminal matter. He said he regret doing it, but I must do what I have to do to practice competently and take care of matters that I'm already pledged to take care of. He indicated that he was having a difficult time keeping up with his current obligations, even apart from appointed cases. So extensions in this appointed case wouldn't have resolved his concerns regarding his ability to maintain his pledged duties to his practice, his family matters, his mother's, deceased mother's estate, and the health issues that were present in the previous case. How much time did the court extend the trial date? So we ended up going to trial, and I apologize I don't have the specific extension because it was done piecemeal. So we have the ultimate trial was in 2016. I believe when we were in, let's see, he moved for additional motion for fees on March 2nd, 2016. That was for additional investigator work, and we've got jury trial March 14th to 17th, 2016. Another thing that is a clue about a year. So from the time the motion was filed? The motion would have been in 2016. The motion was April 15th, 2015. Correct. And it was tried May, did you say? March. Right. March of 2016. But there are two key points I'd like to make sure the court is aware of before I sit down. The first is that the state urges you to look just at the time period, but what the state, the time period of the motion, but what the state is saying the court, what the court had access to was defense arguments and state's arguments. The state had not filed discovery, its discovery responses yet. It did not make clear the number of witnesses that were going to be added to this case. It did not make clear the thousands of pages of discovery, including complex materials regarding cell phones and other expert matters. So the court's view was limited at that point, but it became clear over time that there were a great number of witnesses, a huge amount of evidence, and other matters added to this attorney's plate. Finally, when we get to the post-trial motion, the attorney himself says, he asserts an error that the trial court denied the right to have additional funds for an investigator, and that resulted in the inability to interview key witnesses, including two of the alleged victims of the robbery, and he doesn't specify the other witnesses. So we know that counsel's issues with getting enough time and resources to work on this case did impact his representation. Now, one of the reasons counsel was unable to get that funding was because he didn't detail to the court what the issues were and what he needed to do, and that certainly to me rings of an inability to, or some difficulties with time and other obligations that interfered with his ability to present the issues in Mr. Perkins' case. For those reasons, we ask that this court reverse and remand for additional proceedings in this case. Thank you. Thank you. Okay, this matter will be taken under advisement. I appreciate the arguments of counsel, and in order, I'll issue a report. That concludes the court's topic for the day, and we are adjourned.